May it please the Court, good morning, Your Honors. On behalf of the plaintiff appellant we move this court to overrule the district courts order granting summary judgment on behalf of defendants office of the transitional administrator Earl Dunlap and the County of Cook and also we move that the court find that there are indeed questions of material fact in this case and overrule the award of costs that was entered in favor of the defendant. The case involves a an African-American woman who was a six year employee of the JTDC Juvenile Temporary Detention Center. As the court is aware the center was under the consent decree and was operated pursuant to court order by Earl Dunlap. She had a requisite educational background including a bachelor's degree as well as a master's degree in administrative... She was highly qualified. She was qualified for the job. But the job involves working with juveniles constantly doesn't it? The job involved working at the juvenile detention facility which is... Well what do you do at a juvenile detention facility to keep you from the juveniles? Juvenile detention facility at the time that facility was under the consent decree and administered by Mr. Dunlap was a approximately 60 million dollar annual operation with hundreds of employees. What can you do in the institution and further their thing without out contacting juveniles? There are numerous administrative tasks that could be done and were done in fact by Ms. Carruthers such as being a hearing officer on disciplinary matters involving employees, gathering statistical data for the county board and for the supervisor as well as for Mr. Dunlap. So there are numerous activities involved that have nothing to do with interacting with juvenile detainees at the juvenile detention facility. These positions were all open and ready for somebody to leap in? There were at least two positions open as we have stated in our brief that she was not hired for. She applied and was not hired for. There were other people that were given those positions who were not African-American. In fact we did not have the educational and work experience that she did. So she attempted to do that. The problems occurred during her six-year employment when she, Ms. Carruthers, had a hand injured as a result. She was unable to work for a period of time and then in June of 2009 she came upon a riot by juvenile detainees at the facility and during her attempt to contact for backup and assistance she was rushed by the detainees pinned to a desk by one of them and was brutalized. She sustained injuries as a result of this attack and she reported it to her emergency room at the hospital for treatment. The injuries aggravated the pre-existing injury that she had to her hands as a result of the car accident. Her hands swelled up and she was unable to to function in her job. She was off from work pursuant to doctor's notice. How long was she off work? She was off from work I believe from the accident occurred in June of 2009 up until approximately March of 2010, so six or seven months. Was that a disability leave or paid leave of any kind? Yes, she was on disability leave and was getting paid at the time. In December of 2010 when she was returned to work she went to a resident unit and as a result of her documented in the record she became ill, could not breathe, fainted. She had to be taken to a hospital and treated at the hospital and this was because she was forced by the employer into that situation which they knew that she was restricted by doctor's orders from being put into. The diagnosis and restriction provided for no access to the residents and was confirmed by the There were three doctor's opinions that provided that she was not to have contact with the juvenile detainees because of the anxiety disorder that she was diagnosed with. Her workman's comp claim was contested. She was told to go on disability and go to the pension board and there was a refusal to deal with her situation in a manner that we argue in our brief she should have been and could have been accommodated in with those restrictions and she was certainly qualified and able to perform the positions that were available other than the contact with juvenile detainees. As I said she was an employee prior to being diagnosed with anxiety disorder. She had a good work history up until these series of incidents and injuries and there were reasonable accommodations that could have and should have been made to take into account her disabilities. Plaintiff also brought claims for sex and race discrimination in addition to retaliation. The trial court failed to find that the plaintiff's disability affected major life activities under the ADAAA. The Americans with Disability Act defines disability among other things and we maintain that the plaintiff met and is disabled as defined by the Americans with Disability Act. In any other line of occupation what would this major how would this major life of activity have any impact? Well it depends on the type of position that the person is employed in. Something other than a juvenile delinquency please. Well this is kind of fact-specific your honor because she was brutalized by the juvenile detainees during this riot incident that she was she found herself in the middle of so that has not only caused her physical injuries but also psychological injuries that were diagnosed and treated by both counseling and medication and confirmed in fact by three separate doctors. Well doesn't that fact specificity narrow her claim narrower than what normally when you are limited in a certain life activity the life activity of working isn't that what it is? Well the restriction. What is the life activity? Is it working? The life activity can be and this is again defined under 29 CFR 1630. It could be major life activities include quote performing manual tasks, seeing, hearing, standing, speaking, breathing, learning, reading, concentrating, thinking, communicating and working. Well which one is it or is it all of them? Well she had a restriction she was medically restricted according to her treating physicians from working with the juvenile detainees. She was not restricted from participating in other activities. She's limited to that occupation as far as her limiting major life activity otherwise she can work anywhere else. But during the six year of working during the six years while the plaintiff appellant was working at JTDC she was working gathering statistics for various supervisors and the board and she had to report to the federal court in relation to the consent decree and she worked as a hearing officer disciplinary matters involving employees. She did not have contact with the juvenile detainees. She never was a hearing officer for something going on with the juveniles? That's correct they were not these hearings did not involve juveniles they involved other employees who were alleged to have violated rules and procedures you know absentee issues violence towards detainee issues or you have to hear from the detainee on such a charge? No typically these were alleged violations of the personnel code or policies or procedures of the County of Cook as they related to the implementation of their duties at work or they would involve violation of the provisions of the consent decree itself. They did not involve detainees being present during these disciplinary hearings. Typically that would involve union representation perhaps an attorney if the employee had one it would be that type of a situation. But the Americans with Disability Act as amended in 2008 provided that the primary purpose was to make it easier for people with disabilities to obtain protection under the ADA and it was not you know the question of whether an individual meets the definition of disability under this part should not be should not demand extensive analysis because the courts have previously been looking at more of a disability analysis rather than looking at the discrimination allegation. You're running your rebuttal time you know you can use it if you want. I would rather preserve it if I may. Am I out of time? No, no you're into it Am I into my rebuttal time? You are that's what I call your attention to. All right then I will rest on a brief at this moment and I'll reserve my time for comments. Thank you. Mr. Cargi? Good morning Your Honors. May it please the court my name is Thomas Cargi Assistant State's Attorney and I represent Mr. Dunlap and the Office of the Transitional Administrator. Your Honor, the district court properly found that there were no tribal issues of fact in this case because basically the plaintiff relies solely on her own deposition testimony. I'm not contending the deposition of a plaintiff alone can't establish or can't can't defeat a motion for summary judgment but one presumes that it's only when those facts are colorably true that it can defeat the motion for summary judgment. Mr. Paraka today raised a fact that I've never even seen before. According to my records and according to what's in the record in this case, Ms. Carruthers was a hearing officer for detainees. She heard detainee grievances. She heard I believe was 188 of them, Your Honor. She was never a labor arbitrator. There's no evidence at all and in fact it's not true because the OTA has a separate labor arbitrator named Bruce Berger who does that exclusively. There is no one else at JTDC for the period of time at issue that did labor arbitration. So that's just one fact that is maybe in in her testimony but it's certainly not justified by the records that we have. With regard to the major life activities, Your Honor, it's important to note that in their response to the motion for summary judgment, Ms. Carruthers didn't identify what major life activity was affected. She simply said definitely some of my major life activities are affected. The district court looked at the record and properly determined that the only life activity that was even possible was the inability to work with juvenile detainees. And based on that, the court determined that that is not a major life function since that's exclusive to the job that she was working. On appeal, in working in any job that might have contact with children. However, I forgot to mention this in my brief, but in at the time that she supposedly was precluded from working with any children, she was a clerk at a part-time worker at the Lady Foot Locker. Where? Lady Foot Locker. Oh. And so necessarily she would come into contact with juveniles in that job. What, what? I don't know where, Your Honor. I didn't ask. They sell shoes. Yes, Your Honor. Yeah, it's a shoe store. It's a athletic shoe store. So the claim now that she can't work in any job that comes into contact with public is clearly refuted by the record and by her own testimony. Also, Your Honor, with regard to their constant claims that somehow there are jobs at JTDC that didn't involve contact with children, the record doesn't support that either. We identified two individuals that couldn't work with kids, but that's not because of disabilities. It's because they had committed some act that caused them to be fired. It involved contact with children, and so when a court ordered them to return to work, Earl Dunlap put them in positions where they couldn't, again, interact with children, not because of a disability, not because of any physical or mental condition, but rather because he didn't trust them. And those are the only two people in the record. In her motion, in the response to the motion for summary judgment, Ms. Carothers identifies a document that was produced by the OTA for the County Board that identifies the various work centers in JTDC and claims that this shows that there are jobs without children contact. But there's nothing in there that actually says these jobs don't entail children contact. It just identifies the various work areas. Turning, Your Honor, to another reason why she can't assert a ADA claim is because her limitation is job-specific. Actually, we've already done that. Finally, Your Honor, we did attempt to accommodate her. We tried, once she came back, let me note also that when she came back in March of 2009, she had no limitations at all. So when she came back in March 2009, she never told anybody about this claimed inability to work with children. In fact, she signed a job description in March of 2010. She came back in March of 2010, I'm sorry. In March of 2010, she signed a job description which included the responsibility of being a hearing officer. She told Bill Kern, her hearing officer, but she still signed the form. It wasn't until Kern forced her to perform the responsibility of a hearing officer that she suddenly produced the note from a doctor. He's not even a doctor, he's a health specialist. And that note just simply says, given past circumstances, she shouldn't be working with children at this time. Ms. Parekh had mentioned three doctors. I'm aware of Dr. Malinowski and this health professional. I'm not aware of another doctor in the record who has said that she can't work with children. But be that as it may, it's clear that her limitation was job specific. And so the inability of her to work with children, JTDC, means that she is not otherwise qualified. There's no accommodation that we can make that would enable her to perform her job. Her job involves hearing children's disputes. There is another clerk, Ms. Sykes, I believe her name is, and she does principally data entry. But the reason that she principally does data entry is because she was better at it than Ms. Carruthers was. But it still doesn't preclude the chance that at some point in the future, she may also become a hearing officer. The job requires flexibility. That's why it's hearing officer, administrative assistant. Because when you need more hearing officers, you need the ability of all six of them to work or five of them to work. That's what Kern was trying to do. That's why he required her to go to the training and to begin to serve as a hearing officer again. We didn't talk much initially about the gender discrimination or the sex discrimination, but it's clear that there's a failure proof in that regard. There's no evidence at all about the relative comparators, and when she does cite comparators, she's wrong. She says John Albright has an accommodation that enables him not to work with children. John Albright right now is the supervisor of quality assurance. He's always had extensive contact with children. He still does. She claimed that Donnie Mobley was someone who had excessive absenteeism and was fired but then was allowed to return. In fact, Mr. Mobley was sick. He took a leave of absence. When he got better, he came back to work. There is nothing to show that there was any gender discrimination or sex discrimination in this case except for the fact that Ms. Carruthers is black and that she's a female. Finally, Your Honor, on the retaliation charge. Supreme Court in the Nassar case required but-for causation. Ms. Carruthers never even talks about causation. She just simply recites a list of things that she didn't like and then says she necessarily was retaliated against. Bill Kern and Brenda Welsh, two people that were supervisors to Ms. Carruthers, both testified that they weren't even aware of the EEOC claims. So they couldn't have been the but-for cause. They couldn't have been the but-for cause because they didn't know. Brenda Anderson was the director of HR. She didn't know about it but she testified that she didn't do anything to Ms. Carruthers because of the EEOC charge. If Your Honors have no other questions? Thank you. Mr. Vareka. Yes, Your Honor. As the court can hear, there are disagreements and disputed facts here between the parties even as to some of the essential things. Counsel said to the court that he doesn't know of the three doctors. They are Dr. Campbell, Dr. Miller, and Dr. Minkowski, who is a Cook County medical evaluator, who also found Ms. Carruthers to be diagnosed with an anxiety disorder and agreed that she should not be, for a period of time, temporarily exposed to the juvenile detainees because of the circumstances that brought about her condition. All three gentlemen, or three doctors, are in fact MDs. Regarding the arguments that counsel made with respect to the position, one of the reasons that the federal court took charge of the JTDC and appointed Mr. Dunlap as a temporary administrator is because the place was running amok. The place was being used as a patronage dumping ground. The job classifications meant nothing in the budget. They were ignored wholesale. Monies were being wasted, stolen. Children were being abused. So there's a long history here that preceded and necessitated, in fact, the appointment of a temporary overseer, Mr. Dunlap. But there are many within the budget and within the functions of the JTDC, there are many administrative positions that did not have a contact with the residents. For example, finance, executive secretaries, numerous other positions where contact with the detainees was not required. The employer had a duty to try to accommodate, and part of that was to consult with the employee to determine the precise job-related limitations imposed by the disability and provide or overcome those with a reasonable accommodation. There was no attempt to do that with Ms. Crothers. In fact, every obstacle was placed in front of her at every step of the way with respect to the disability, the workman's compensation, the medical reimbursement. There are all kinds of obstacles that were placed before her to make sure that she is not able to return to her usual position. When she applied for other jobs, you know, she was not selected for either of the two positions that she did apply for, as we have stated in our reply brief. The disability here is clearly documented by three separate physicians. It is a recognized disability under the ADA. There were reasonable accommodations that the employer could have made if they wanted to, but because of the, if you will, oversight by the situation there, he felt that he could operate and do whatever he wanted whenever he wanted, however he wanted. And in this particular case, he abused his authority in the manner that he treated Ms. Crothers, and he violated her constitutional rights. And therefore, we are asking your Honor to take into consideration both our brief and the reply brief and take a look at the arguments as well as the cases. We believe that the trial court should be a multitude of disagreements with respect to the essential facts in this case. Thank you. Thanks, Reiko. Thanks to all counsel. The case is taken under advice.